IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

DENNIS REESE,

       Plaintiff,

v.                               CIV No. 10-1247 LH/RHS

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, a political
subdivision of the STATE OF NEW MEXICO, et al.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Ron Torres' Motion and

Memorandum in Support of Motion to Dismiss Civil Rights Claims on the Basis of Qualified

Immunity ("Torres' Motion"), (Doc. 41), filed October 13, 2011, and the Board of County

Commissioners of the County of Bernalillo's Motion and Memorandum in Support of Motion to

Dismiss Count I, ("County's Motion"), (Doc. 48), filed November 16, 2011.  The Court, having

considered the motions, the briefs of the parties, and the applicable law, and otherwise being

fully advised, finds that both Torres' Motion and the County's Motion are **well-taken** and will

be **granted**.  Accordingly, the claims in Count I of Plaintiff's First Amended Complaint asserted

against Defendant Ron Torres ("Defendant Torres") and Defendant Board of County

Commissioners of the County of Bernalillo ("Defendant County") for violations of the

Fourteenth and Eighth Amendments, and of Article II, Section 13 of the New Mexico

Constitution, are dismissed.  However, Plaintiff's claims, under the  Fourteenth and Eighth

Amendments and under state law, remain as to the following defendants:  William Shannon,

Timothy McMurray, Orlando Garcia, J.J. Box, Correctional Healthcare Management, and

Andrew Griego.  Additionally, Count IV, in which Plaintiff asserts negligence claims against

Defendant Torres and Defendant County, remains but is the subject of a pending motion to

dismiss.[1]

## I.  BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint (Doc. 33)[2] and

are construed in the light most favorable to Plaintiff:

Plaintiff Dennis Reese ("Plaintiff") was a detainee or inmate at the Bernalillo County

Detention Center ("BCDC") from December 18, 2008 until October 28, 2009.  (Pl.'s Am.

Compl. (Doc. 33) ¶¶ 13, 55, 77.)  Plaintiff contends that he suffered a knee injury prior to being

booked at BCDC.  (*Id.* ¶¶ 13, 14.)  Plaintiff also claims that he "complained of his knee injury"

to the intake healthcare professional Defendant Orlando Garcia, who performed a medical

history and screening on him at the time of his arrival at BCDC.  (*Id.* ¶¶ 16, 17.)  The next day,

---

[1] Defendant Torres and Defendant County filed their Motion to Dismiss Tort Claims in Count IV on October 21, 2011.  (Doc. 44.)  In that motion, Defendants argue that Plaintiff's negligence claims against them fail because no waiver of immunity exists under the New Mexico Tort Claims Act as to Defendant Torres and because Plaintiff fails to state a claim under the New Mexico Tort Claims Act against Defendant County.  The present Memorandum Opinion does not resolve this independent motion concerning Plaintiff's negligence claims.

[2] As both Defendant Torres and Defendant County have noted in their reply briefs, Plaintiff has included in his responses to their motions to dismiss various references to facts not in the record and not alleged in his First Amended Complaint.  While Plaintiff attached and referred to numerous exhibits in its initial response to Torres' Motion, he thereafter submitted an Amended Response and withdrew these exhibits, filing a stipulation that the contents of the exhibits should not be considered by the Court in determining the motions to dismiss.  (Doc. 52.)  Nevertheless, Plaintiff's responsive briefs included "facts" derived from the withdrawn exhibits.  Because reference to facts not alleged in a complaint is impermissible on a motion to dismiss, *see Gallegos v. Jicarilla Apache Nation*, 97 Fed. Appx. 806, 814 (D.N.M. 2003) (unpublished), the Court has omitted such "facts" from this Memorandum Opinion and from its consideration of both Torres' Motion and County's Motion.

Plaintiff saw Licensed Practical Nurse Defendant J.J. Box and again complained of "left knee swelling and pain." (*Id.* ¶¶ 7, 19.)  Between December 19, 2008 and February 2, 2009, Plaintiff made multiple complaints to medical personnel at BCDC regarding knee pain and swelling in his left knee.  (*See id.* ¶¶ 21-27.)  An X-Ray was eventually ordered on February 2, 2009, after Plaintiff once again returned to medical complaining of "knee swelling."  (*Id.* ¶ 28.)  The X-Ray, performed February 4, 2009, showed a "communited and markedly separated left patellar fracture," and Plaintiff was referred to a University of New Mexico Hospital ("UNMH") physician, who confirmed the diagnosis.  (*Id.* ¶¶ 28-31.)  Plaintiff was issued a knee immobilizer, a walker and cane, a narcotic analgesic prescription for pain, and was scheduled to see a UNMH orthopedic surgeon on February 9, 2009.  (*Id.* ¶ 31.)  However, a referral for an off-site UNMH pre-operative appointment with the orthopedic surgeon was completed by Defendant William Shannon ("Defendant Shannon") for the wrong date, resulting in the appointment being pushed back seven days to February 16, 2009.  *(Id.* ¶ 32.)  Plaintiff was seen by the UNMH surgeon on February 16, 2009, and his surgery was scheduled for March 11, 2009.  (*Id*. ¶ 35.)

Plaintiff received surgery – more specifically, an open reduction and internal fixation of the fracture to his left knee – on March 11, 2009, and was discharged two days later.  (*Id*.)  Plaintiff had a follow-up orthopedic appointment at UNMH on March 23, 2009, at which he was instructed to return for another follow-up visit in three weeks.  (*Id*. ¶ 36.)  Plaintiff was then returned to UNMH on April 20, 2009, and was given a prescription for both physical therapy and a "Dyna Splint" for his knee.  (*Id*. ¶ 37.)  He was also told to return in six to eight weeks for another follow-up appointment.  (*Id.*)

On May 8, 2009, Plaintiff was transported to Rehabilitative Services for physical therapy, where a physical therapist prescribed physical therapy twice weekly for the first week and then

once weekly for the following four weeks.  (*Id.* ¶ 38.)  The physical therapist also reminded

BCDC health providers of Plaintiff's need for a "Dyna Splint."  (*Id.*)  On May 14, 2009, Plaintiff

filed a grievance with the BCDC complaining that he had yet to return to Rehabilitative Services

for off-site physical therapy, that he had been denied access to an exercise bike at BCDC's

infirmary, and that he had not received his prescribed "Dyna Splint."  (*Id.* ¶ 39.)  BCDC

responded by informing Plaintiff that he was scheduled for a brace fitting at Carrie Tingly on

May 15, 2009, and that he had been cleared by BCDC physician Defendant Shannon to return to

general population.  (*Id.* ¶ 40.)

On June 4, 2009, Plaintiff filed another grievance with BCDC indicating that he was "not

receiving his prescribed physical therapy."  (*Id.* ¶ 41.)  BCDC responded by asserting that

Plaintiff had previously been seen in sick call and by Defendant Shannon and that he was to see

the sick call nurse again for an appointment with Defendant Shannon for review.  (*Id.*)  On June

9, 2009, Plaintiff was taken to have his brace fitted and returned with instructions to the BCDC

healthcare providers to increase the tension on his brace on a weekly basis.  (*Id.* ¶ 43.)  On June

23, 2009, Plaintiff returned to medical at BCDC and requested that BCDC healthcare providers

tighten his knee brace as prescribed.  (*Id.* ¶ 44.)

On June 24, 2009, Plaintiff's counsel wrote a letter to Defendant Torres "with regards to

grievances previously submitted by Plaintiff on May 14th and June 4th."  (*Id.* ¶ 45.)  Defendant

Torres is the Director of BCDC, and Plaintiff alleges that he, in a joint effort with BCDC

grievance officers and healthcare providers, was responsible for ensuring that Plaintiff had

access to quality healthcare.  (*Id.* ¶ 3.)  Defendant Torres did not respond to the June 24, 2009

letter.  (*Id.* ¶ 45.)

On June 29, 2009, Plaintiff returned to medical "complaining that he was to receive

4

weekly tightening of his brace and physical therapy as prescribed by the therapist and that, since May 8th, had only been to [physical therapy] twice." (*Id.* ¶ 46.) Defendant Garcia increased the brace tension and instructed Plaintiff to return to medical in two weeks for another tightening. (*Id.* ¶ 48.)

On July 2, 2009, Plaintiff filed another grievance, indicating that he was still not receiving his prescribed physical therapy and was being denied access to the exercise bike in the infirmary. (*Id.* ¶ 47.) BCDC responded by asserting that Plaintiff had an off-site physical therapy visit pending and that he was seen in the infirmary and was receiving appropriate care. (*Id.* ¶ 48.) Defendant Shannon had completed an off-site referral for Plaintiff to be transported to physical therapy on July 22, 2009. (*Id.* ¶ 50.)

Plaintiff received physical therapy on July 22, 2009, and returned to BCDC with "new orders for exercise on the Elliptical three times weekly and no need to return to . . . off-site physical therapy." (*Id.* ¶ 51.) On August 21, 2009, Plaintiff filed yet another grievance complaining of "continued problems with access to prescribed physical therapy." (*Id.* ¶ 52.) BCDC responded by informing Plaintiff that he was receiving appropriate care under his BCDC doctor, who was his provider and would determine appropriate care. (*Id.* ¶ 53.)

Finally, on October 28, 2009, Plaintiff was transferred from BCDC to the custody of the New Mexico Department of Corrections. (*Id*. ¶ 55.)

## II.  LEGAL STANDARDS

### A. Motion to Dismiss

On ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 573 (1007)). The Supreme Court's prescribed inquiry when reviewing a

motion to dismiss is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  To survive a dismissal, a plaintiff must "nudge his claims across the line from conceivable to plausible." *Id.* (quoting *Towmbly*, 550 U.S. at 570).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*  Consequently, if the allegations in the complaint are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff has not met the plausibility standard. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" to show that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 555.  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted).

### B.  Qualified Immunity

Qualified immunity shields government official performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, as Defendant Torres has here, the plaintiff bears the burden of demonstrating that 1) the facts alleged showed that the official's conduct violated a constitutional right, and 2) the right was clearly established at the time of the

6

conduct. *See Pearson v. Callahan,* 555 U.S. 223 (2009).  Whether the right is clearly established must be analyzed not as a broad proposition but with consideration to the case's specific context. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 227.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts  must have found the law to be as the plaintiff maintains."  *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

        To meet the plausibility standard in the qualified immunity context, a plaintiff must allege sufficient facts to show that the defendants plausibly violated his constitutional rights and that those rights were clearly established at the time.  *Robbins*, 519 F.3d at 1249.

## III.  ANALYSIS

        Relevant to the present Memorandum Opinion and Order are Plaintiff's allegations in Count I of his First Amended Complaint that Defendant Torres and Defendant County violated the Eighth and Fourteenth Amendments, as well as Article II, Section 13 of the New Mexico Constitution, by being deliberatively indifferent to Plaintiff's serious medical condition and failing to provide adequate and timely healthcare for such condition.  (Pl.'s Am. Compl. ¶¶ 83-84.)

        According to Plaintiff, he was, at all material times, either a BCDC pretrial detainee awaiting trial or a BCDC post-sentencing inmate awaiting transfer to the New Mexico Department of Corrections. To the extent that Plaintiff was a "detainee" and not a "prisoner" at the time of the alleged civil rights violations, the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment, applies to his federal constitutional claims.  *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).  Plaintiff's actual status, however, does not

affect the applicable analysis, as claims under the Due Process Clause are analyzed in the same manner as those under the Eighth Amendment. *See id*. Accordingly, Plaintiff's claims are analyzed under Eighth Amendment case law.

### A.  Constitutional Violation by Defendant Torres

Acts or omissions by prison officials that are "sufficiently harmful to evidence deliberate indifference to serious medical needs" violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official does *not* violate the Eighth Amendment, however, if he is not aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed and if he did not in fact draw the inference. *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006).

The "deliberate indifference" standard involves both an objective and a subjective component and requires that the plaintiff make a two-part showing: 1) that, objectively, the plaintiff's medical needs were "sufficiently serious," and 2) that, subjectively, the offending official acted with a culpable state of mind; that is, he or she knew about the serious medical need and intentionally refused to provide medical care or intentionally interfered with treatment. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

### 1.  Objective Component:  Sufficiently Serious

A "sufficiently serious" medical need is one "diagnosed by a physician as mandating treatment" or one that "is so obvious that even a lay person can easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  Notably, where the need for medical treatment would not be obvious to a layperson, a physician's medical judgment, even if it is grossly negligent, is not subject to second-guessing under the Eighth Amendment. *Mata*, 427 F.3d at 751.  Moreover, a delay in medical care "only constitutes an

8

Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Id.* (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Under Tenth Circuit law, "[t]he substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Here, Plaintiff argues that Defendant Torres "was deliberately indifferent to his serious medical condition" by failing "to meaningfully respond to Plaintiff's grievances regarding prescribed post-surgical physical therapy." (Pl.'s Am. Resp. to Torres' Motion (Doc. 49) 6.) Accordingly, Plaintiff limits his Section 1983 claim against Defendant Torres to the period of time after his knee surgery and to the purportedly inadequate physical therapy that he received.

Plaintiff argues that "[g]iven [his] injury and surgical intervention, [his] orthopedic surgeon further mandated that [he] receive post-surgical physical rehabilitation and a Dyna Splint with a prescribed tightening regimen in order to rehabilitate [his] post-surgical knee." (*Id.*); (*see also* Pl's Am. Compl. ¶ 37.) Plaintiff also asserts that an "off-site Physical Therapist further mandated a specific physical therapy regimen in order to rehabilitate Plaintiff's post-surgical knee." (Pl.'s Am. Resp. to Torres' Motion 9); (*see also* Pl.'s Am. Compl. ¶ 38.) Plaintiff contends, however, that he was not afforded all of the prescribed physical therapy for his knee.

With respect to the objective component of the deliberate indifference test, Plaintiff argues that his "knee fracture was sufficiently serious to give rise to a constitutional violation." (Pl.'s Am. Resp. to Torres' Motion 10.) In the Court's view, however, such an argument does not properly frame the relevant inquiry. Although the Court agrees with Plaintiff that a knee fracture may pose a serious medical need, the proper inquiry here is, more precisely, whether the

9

need for a *specific post-surgical physical therapy regimen* was "sufficiently serious" to meet the objective element of the deliberate indifference test.  Further, Plaintiff's claim can be characterized as one of interrupted treatment, rather than a general failure to provide medical treatment, for his post-operative knee. Notably, where the alleged violation is inadequate medical treatment, rather than the failure to provide *any* treatment, the "seriousness inquiry is narrower" and focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  *Price v. Reilly*, 697 F. Supp. 2d 344, 357 (E.D.N.Y. 2010).  Put another way, the mere fact that Plaintiff's underlying knee fracture may have been a serious medical condition does not necessarily mean that infrequent post-surgical physical therapy posed an objectively serious health risk to Plaintiff.

There is no dispute that an orthopedic doctor ordered Plaintiff to participate in physical therapy after his knee surgery.  Indeed, according to Plaintiff's Amended Complaint, Plaintiff received a prescription for both physical therapy and a "Dyna Splint" at his April 20, 2009 follow-up appointment at UNMH.  Thereafter, at Plaintiff's first off-site physical therapy appointment, the physical therapist at Rehabilitative Services "prescribed" a five-week physical therapy regimen of two times per week for the first week and one time per week for the following four weeks.  Viewing the facts in the light most favorable to the Plaintiff, he received physical therapy less frequently than "prescribed" by the physical therapist.  More particularly, instead of six off-site physical therapy sessions in five weeks, he received three off-site physical therapy sessions in six weeks.  (*See* Pl.'s Am. Compl. ¶¶ 38, 46, 51.)

It is not entirely clear, however, that a *particular physical therapy regimen* suggested or even "prescribed" by a physical therapist constitutes a "sufficiently serious medical need," which is defined as a need "diagnosed by a physician as mandating treatment" or one that "is so

obvious that even a lay person can easily recognize the necessity for a doctor's attention."
Although Plaintiff's orthopedic surgeon "mandated" physical therapy at Plaintiff's April 20,
2009 follow-up appointment, and a need for some form of post-surgery physical therapy is
arguably even obvious to a lay person, it is significant that the *particular regimen* was prescribed
by a physical therapist at a time when Plaintiff was under the care of and receiving treatment
from BCDC medical staff, including his treating physician, Defendant Shannon ("Dr.
Shannon").  Again, when the need for particular medical treatment would not be obvious to a
layperson, a physician's medical judgment is not subject to second-guessing under the Eighth
Amendment.  *Mata*, 427 F.3d at 751.

       According to Plaintiff's Amended Complaint, it was Dr. Shannon who completed
referrals for Plaintiff's off-site physical therapy appointments, who evaluated Plaintiff's
condition when he went to "sick call," who cleared Defendant for return to general population,
and who "over-ruled [another medical provider's] order to allow Plaintiff access to the exercise
bike."  (Pl.'s Am. Compl. ¶¶ 40-43, 49-50, 53.).  Thus, Dr. Shannon was dictating the care,
including the physical therapy, that Plaintiff received after his knee surgery.  Plaintiff's
disagreement over the course of treatment dictated by Dr. Shannon does not amount to a
constitutional violation.  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("a mere
difference of opinion between the prison's medical staff and the inmate as to the diagnosis or
treatment which the inmate receives does not support a claim of cruel and unusual punishment").

       The Court is hesitant to declare the precise physical therapy regimen prescribed by an
off-site physical therapist, which apparently diverged from the treatment that Dr. Shannon
thought necessary, to be a "sufficiently serious" medical need, especially when Plaintiff was
afforded *some* off-site physical therapy, albeit less frequently than initially "prescribed" by the

11

physical therapist. *See Stevens v. Goord*, 535 F. Supp. 2d. 373, 386 (S.D.N.Y. 2008) ("the medical judgment regarding the frequency of physical therapy to be prescribed – at least provided such therapy is being prescribed . . . falls into the category of disputes regarding choice of treatment, which do not provide the basis for a constitutional claim").

More importantly, an allegation of less-frequent-than-prescribed physical therapy, apart from any allegation of "substantial harm," does not constitute an Eighth Amendment violation. Under Tenth Circuit law, Plaintiff must not only establish that the prescribed physical therapy regimen was a "sufficiently serious" medical need, but also that any delay in receiving such treatment caused him "substantial harm." *See Oxendine*, 241 F.3d at 1276-77. But, significantly, Plaintiff has not detailed or even alluded to *any* adverse medical outcome related to the failure to receive regular or as-prescribed physical therapy. The singular allegation in Plaintiff's Amended Complaint as to purported injury from delayed or infrequent physical therapy treatments is as follows: "Plaintiff has incurred damages from the lack of timely and appropriate care of his orthopedic injury." (Pl.'s Am. Compl. ¶ 75.) Plaintiff does not attempt to elaborate on these "incurred damages," either in his Amended Complaint or in his briefing on Defendants' motions.

According to the Tenth Circuit, lifelong handicap, permanent loss, or considerable pain satisfy the substantial harm requirement. *Mata, 427 F.3d at 751* (quoting *Garrett*, 254 F.3d at 950). Yet Plaintiff has not alleged that delayed or interrupted physical therapy actually resulted in any such harm. For instance, he does not claim delayed rehabilitation, loss of mobility, or even pain associated with delayed or irregular physical therapy. In contrast, Plaintiff's Amended Complaint actually suggests that there was no harm, substantial or otherwise, caused to his knee by infrequent physical therapy. Plaintiff asserts therein that after receiving off-site physical

therapy for the third time on July 22, 2009, he returned to BCDC with "new orders for exercise on the Elliptical three times weekly and *no need to return to . . . off-site physical therapy*."  (Pl.'s Am. Compl. ¶ 51)  (emphasis added).  This suggests that even the off-site physical therapist, not to mention the prison doctors responsible for Plaintiff's care, considered the condition of Plaintiff's four-month-post-op knee to be satisfactory, such that he no longer required coordinated physical therapy sessions.

In sum, Plaintiff's vague and conclusory allegation that he "incurred damages" from Defendant Torres' failure to meaningfully respond to his grievances regarding prescribed post-surgical physical therapy fails to satisfy the objective prong of the deliberative indifference standard wherein he must allege a "sufficiently serious" medical need and "substantial harm" from the delay or inadequacy in treating such need.  Simply put, Plaintiff has failed to state a plausible claim that receiving three off-site physical therapy sessions in six weeks, rather than six off-site physical therapy sessions in five weeks, posed an objectively serious risk to his health and resulted in "substantial harm."

### 2.  Subjective Component:  Culpable State of Mind

Secondly, even if Plaintiff's assertions satisfied the objective component of the deliberate indifference standard, he fails to satisfy the subjective component, which requires sufficient allegations regarding Defendant Torres' culpable state of mind.  *See Estelle*, 429 U.S at 106. The subjective prong may only be satisfied with facts making it plausible that Defendant Torres knew of and disregarded an excessive risk to Plaintiff's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In his Amended Complaint, Plaintiff specified that it was Defendant Torres' "fail[ure] to effectively respond to [his] grievances" that "constituted deliberate indifference to [his] serious

13

medical condition." (Pl.'s Am. Compl. ¶ 83.) Plaintiff relies upon the grievances that he filed in May and June of 2009 with BCDC to assert that Defendant Torres was "on notice" of the failures of BCDC personnel to provide proper post-surgical treatment to Plaintiff. (Pl.'s Am. Resp. to Torres' Motion 10-11.) In these grievances, Plaintiff complained that he had not yet been returned for physical therapy, had been denied access to the BCDC's exercise bike, and had not received his prescribed "Dyna Splint." (Pl.'s Am. Compl. ¶¶ 39, 41.)

Significantly, Plaintiff has not alleged any facts that would show that Defendant Torres was even aware of Plaintiff's grievances or complaints prior to June 24, 2009. For instance, Plaintiff does not assert that Defendant Torres personally received, reviewed, or responded to the grievances or otherwise knew of their existence. The mere fact that Plaintiff filed grievances with BCDC does not necessarily suggest that Defendant Torres was aware of Plaintiff's purported need for more frequent physical therapy and yet deliberately refused to provide it. Moreover, even if Defendant Torres had denied Plaintiff's grievances regarding the need for physical therapy himself, the denial of grievances alone is generally insufficient to establish personal participation in Eighth Amendment violations for inadequate medical care. *See Whittington v. Ortiz*, No. 07-1425, 2009 WL 74471, *12 (10th Cir. Jan. 13, 2009); *Downing v. Clinton*, No. 05-177, 2006 WL 3054314, *15 (E.D. Wash. Oct. 26, 2006) (concluding that the plaintiff failed to establish the elements of personal participation and deliberate failure or refusal to provide medical treatment by the defendant, as the mere fact that the plaintiff sent grievances to the defendant did not establish her personal participation in his medical care).

Next, Plaintiff claims that a June 24, 2009 letter sent from his counsel directly to Defendant Torres "further alerted" Defendant Torres of the "ongoing failures by the BCDC medical unit to provide the prescribed treatments." (Pl.'s Am. Resp. to Torres' Motion 11.) The

14

June 24, 2009 letter, unlike the earlier grievances, may suggest some awareness by Defendant

Torres as to Plaintiff's complaints regarding inadequate physical therapy.  Nevertheless, at the

time of the June 24, 2009 letter, Plaintiff remained under the care of the BCDC medical team,

including Dr. Shannon.  As such, Defendant Torres, as a non-physician administrator at BCDC,

cannot be said to have been deliberately indifferent to the serious medical needs of Plaintiff

simply because he did not respond to the June 2009 letter from Plaintiff's counsel.  *See Durmer*

*v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (a non-physician prison warden was not deliberately

indifferent where he did not respond to medical complaints of a prisoner who was under the care

of a prison doctor).

    The subjective component of the deliberate indifference standard requires that the official

act or fail to act while actually aware of a substantial risk that serious inmate harm would result.

Although Defendant Torres became aware of Plaintiff's complaints concerning his physical

therapy treatment through the June 24, 2009 letter, there are no facts asserted to indicate that

Defendant Torres had reason to believe that a failure to intervene in the medical care

administered and coordinated by Dr. Shannon and other prison medical staff would result in

serious harm to Plaintiff.   Notably, to constitute deliberate indifference, an official's actions

must entail more than mere negligence and the risk of harm must be substantial.  *See Estelle*,

429 U.S. at 105-06.

    In sum, an assertion that Defendant Torres received one letter complaining about

infrequent physical therapy, at a time when Plaintiff was being seen and treated by a prison

physician, is insufficient to state a claim under Section 1983 for a violation of the Eighth or

Fourteenth Amendment.  Because Plaintiff has not alleged sufficient facts to state a claim that

Defendant Torres knew of and disregarded an excessive risk to Plaintiff's health or safety, the

claims against Defendant Torres asserted under the Eighth and Fourteenth Amendment for cruel and unusual punishment fail and, accordingly, must be dismissed.

### B.  Clearly Established

Because this Court concludes herein that Plaintiff has not alleged sufficient facts to show that the Defendant Torres plausibly violated his constitutional rights, it becomes unnecessary for the Court to consider whether the right that Defendant Torres allegedly violated was clearly established in the specific context of this case.  Given Plaintiff's failure to meet his burden to state a claim for a constitutional violation, Defendant Torres is entitled to qualified immunity.

### C.  Municipal Liability Claims against BCDC

Also in Count I of his First Amended Complaint, Plaintiff asserts a claim against Defendant County under Section 1983 for a violation of the Fourteenth and Eighth Amendments as well as Article II, Section 13 of the New Mexico Constitution.  According to Plaintiff's Amended Complaint, Defendant County is "liable by virtue of [its] affirmative links to the deliberate indifference of [its] employee/agents/subagents."  (Pl.'s Am. Compl. ¶ 85.)  Within Count I, Plaintiff contends that Defendant County "was responsible for supervising Defendant Torres and Defendant Griego" and that Defendant County had "final decision and policy-making authority for management of its jail."  (*Id.* ¶¶ 2, 81.)

Defendant County, in its motion to dismiss, argues that Plaintiff's allegations are insufficient as a matter of law to state a Section 1983 claim against Defendant County, as there is no *respondeat superior* liability available and Plaintiff has failed to allege that the County had a policy or custom of violating the Eighth and Fourteenth Amendment rights of BCDC detainees.

Indeed, the United States Supreme Court has clearly held that a county cannot face strict liability or *respondeat superior* liability under Section 1983 based upon an employee's

constitutional violation. *Bd. of County Comm'rs v. Brown*, 520 U.S 397, 403 (1997). Rather, to prevail against a county or other municipality under Section 1983 for the conduct of one of its employees, a plaintiff must establish: 1) that the employee committed a constitutional violation, and 2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. County Bd. of County Com'rs*, 151 F.3d 1313, 1316-17 (10th Cir. 1998). A municipal custom or policy can be shown in several ways. It can be established by showing the existence of an express policy or custom, the provision of inadequate training, or a practice so widespread as to constitute custom or usage with the force of law. *Herrera v. County of Santa Fe*, 213 F. Supp. 2d 1288, 1290 (D.N.M. 2003). Alternatively, a municipal custom or policy may be shown where the unconstitutional actions of an employee "were carried out by an official with final policy making authority with respect to the challenged action." *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1189 (10th Cir. 2003). Regardless of the manner of establishing a policy or custom, a plaintiff must establish a direct causal link between the policy or challenged action and the alleged injury. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff's Section 1983 claim against Defendant County is apparently premised wholly upon the alleged constitutional violations of Defendant Torres. (*See* Pl.'s Resp. County's Motion, (Doc. 51).) Although the Amended Complaint makes the broad allegation that Defendant County is liable "by virtue of its affirmative links to the deliberate indifference of its employees, agents, and subagents," Plaintiff's briefing indicates that Defendant County's constitutional violation rests solely upon the purported constitutional violations of Defendant Torres. (*Id.* at 9-14.)

The Court has determined herein, *see supra* Part III.A, that Plaintiff failed to allege

sufficient facts to state an Eighth or Fourteenth Amendment violation by Defendant Torres.

Such a determination, in turn, precludes Plaintiff from stating a claim against Defendant County

premised upon the alleged violation of Defendant Torres, for a municipality may not be held

liable where there was no underlying constitutional violation by its official.  *Hinton v. City of

Elwood,* 997 F.2d 774, 782 (10th Cir. 1993).  Further, even if Plaintiff had stated a claim for a

constitutional violation by Defendant Torres, he fails to otherwise assert sufficient facts to make

out a plausible municipal liability claim against Defendant County.

 First, Plaintiff's Amended Complaint fails to allege the existence of an express policy or

custom, inadequate training, or a widespread practice constituting custom or usage.  Instead,

Plaintiff maintains in his response brief that Defendant County and Defendant Torres acted as

the "municipal policymakers" and, thus, face liability under Section 1983.  (Pl.'s Resp. to

County's Motion, 11.)  However, despite the arguments of counsel, the Amended Complaint

remains barren of any allegation that Defendant Torres had final policy-making authority in the

relevant area:  regarding healthcare decisions at BCDC.[3]  While Plaintiff contends that "the

authority of Defendant Torres . . . is established by state law," citing N.M. Stat. Ann. § 33-3-1

and § 33-3-4, neither of the referenced statutes provide Defendant Torres final policymaking

authority regarding the medical treatment of Plaintiff.  Notably, Plaintiff himself contends that

the BCDC Medical Director Dr. William Shannon, not Defendant Torres, had final authority for

making and/or approving medical decisions regarding BCDC detainees and inmates.  (Pl.'s Am.

---

[3] The only assertions regarding final policy-making authority to be found in the Amended Complaint are that Defendant County had final decision and policy-making authority for managing the jail and that BCDC Medical Director Defendant William Shannon had final authority for making and/or approving medical decisions.  (*See* Pl.'s Am. Compl. ¶¶ 2, 65.)

Compl. ¶ 65.)

For all of these reasons, Plaintiff has failed to state a claim for municipal liability premised on the actions or omissions of Defendant Torres, and such a claim must therefore dismissed.

**D.  State Constitutional Violations.**

Article II, Section 13 of the New Mexico Constitution proscribes the imposition of cruel and unusual punishment.  N.M. Const. art. II, § 13.  New Mexico courts construing this constitutional provision are in accord with the United States Supreme Court's construction of the Eighth Amendment.  *State v. Smallwood*, 608 P.2d 637, 541 (N.M. Ct. App. 1980).  Because Plaintiff has failed to show a violation of the federal constitution, under either the Eighth or Fourteenth Amendment, he likewise fails to show a violation under the similar provision of the New Mexico Constitution.  Therefore, such state constitutional claims, asserted against both Defendant Torres and Defendant County, must be dismissed.

**IV.  CONCLUSION**

For all of these reasons, the Court concludes that Defendant Torres is entitled to qualified immunity and that Plaintiff has failed to state a municipal liability claim against Defendant County in Count I of First Amended Complaint.

**IT IS THEREFORE ORDERED** that  Defendant Ron Torres' Motion and Memorandum in Support of Motion to Dismiss Civil Rights Claims on the Basis of Qualified Immunity (Doc. 41), filed October 13, 2011, and the Board of County Commissioners of the County of Bernalillo's Motion and Memorandum in Support of Motion to Dismiss Count I (Doc. 48), filed November 16, 2011, are hereby **GRANTED**.

**IT IS FURTHER ORDERED THAT** Plaintiff's claims in **Count I** of his First Amended

19

Complaint asserted against Defendant Torres and Defendant County are **dismissed**.

_____
SENIOR UNITED STATES DISTRICT JUDGE