**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

DENNIS REESE,

    Plaintiff,

v.                                                                                          CIV No. 10-1247 LH/RHS

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, a political
subdivision of the STATE OF NEW MEXICO, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendants Ron Torres and Board of County Commissioners of the County of Bernalillo's Motion and Memorandum to Dismiss Tort Claims in Count IV ("Motion to Dismiss Tort Claims"), (Doc. 44), filed October 21, 2011. The Court, having considered the motion, the briefs of the parties, and the applicable law, and otherwise being fully advised, finds that the Motion to Dismiss Tort Claims is **well-taken** and will be **granted**. Accordingly, the negligence claims in **Count IV** of Plaintiff's First Amended Complaint ("Complaint") (Doc. 33) asserted against Defendant Ron Torres ("Defendant Torres") and Defendant Board of County Commissioners of the County of Bernalillo ("Defendant County") shall be **dismissed.**

**I. BACKGROUND[1]**

---

[1] Both Plaintiff and Defendants have included in their briefs references to factual assertions relating to alleged conduct and omissions by various defendants prior to Plaintiff's March 11, 2009 surgery. However, because Plaintiff has effectively limited the scope of his negligence claims against Defendants to acts and omissions that occurred after his surgery, (see Pl.'s Resp., at 6), the Court has omitted and not considered facts relating to Plaintiff's pre-

The following facts are taken from Plaintiff's First Amended Complaint (Doc. 33) and are construed in the light most favorable to Plaintiff:

Plaintiff Dennis Reese ("Plaintiff") was a detainee or inmate at the Bernalillo County Detention Center ("BCDC") from December 18, 2008 until October 28, 2009.  (Pl.'s Am. Compl. (Doc. 33) ¶¶ 13, 55, 77.)  Plaintiff contends that he suffered a knee injury prior to being booked at BCDC.  (*Id*. ¶¶ 13, 14.)  Defendant William Shannon, a physician employed by Defendant Correctional Medical Services ("CMS") and who provided medical directorship of the BCDC medical services unit under a contract between CMS and Bernalillo County, referred Plaintiff for an off-site appointment with an orthopedic surgeon at University of New Mexico Hospital ("UNMH") on February 16, 2009. (*Id*. ¶ 32.)  Thereafter, Plaintiff received surgery – more specifically, an open reduction and internal fixation of the fracture to his left knee – on March 11, 2009, and was discharged two days later.  (*Id*. ¶ 35.)  Plaintiff had a follow-up orthopedic appointment at UNMH on March 23, 2009, at which he was instructed to return for another follow-up visit in three weeks.  (*Id*. ¶ 36.)  Plaintiff was returned to UNMH on April 20, 2009, and was given a prescription for both physical therapy and a "Dyna Splint" for his knee.  (*Id*. ¶ 37.)  He was also told to return in six to eight weeks for another follow-up appointment.  (*Id.*)

On May 8, 2009, Plaintiff was transported off-site to Rehabilitative Services for physical therapy, where a physical therapist prescribed therapy twice weekly for the first week and then once weekly for the following four weeks.  (*Id.* ¶ 38.)  The physical therapist also reminded BCDC health providers of Plaintiff's need for a "Dyna Splint."  (*Id.*)  On May 14, 2009, Plaintiff

---

surgery treatment by Defendants in deciding Defendants' Motion to Dismiss Tort Claims.

filed a grievance with the BCDC complaining that he had not yet returned to Rehabilitative Services for off-site physical therapy, that he had been denied access to an exercise bike at BCDC's infirmary, and that he had not received his prescribed "Dyna Splint." (*Id.* ¶ 39.) BCDC responded by informing Plaintiff that he was scheduled for a brace fitting at Carrie Tingly on May 15, 2009, and that he had been cleared by BCDC physician Defendant Shannon to return to general population. (*Id.* ¶ 40.)

On June 4, 2009, Plaintiff filed another grievance with BCDC indicating that he was "not receiving his prescribed physical therapy." (*Id*. ¶ 41.) BCDC responded by asserting that Plaintiff had previously been seen in sick call and by Defendant Shannon and that he was to see the sick call nurse again for an appointment with Defendant Shannon for review. (*Id.*) On June 9, 2009, Plaintiff was taken to have his brace fitted and returned with instructions to the BCDC healthcare providers to increase the tension on his brace on a weekly basis. (*Id.* ¶ 43.) On June 23, 2009, Plaintiff returned to medical at BCDC and requested that BCDC healthcare providers tighten his knee brace as prescribed. (*Id.* ¶ 44.)

On June 24, 2009, Plaintiff's counsel wrote a letter to Defendant Torres "with regards to grievances previously submitted by Plaintiff on May 14th and June 4th." (*Id*. ¶ 45.) Defendant Torres is the Director of BCDC, and Plaintiff alleges that he, in a joint effort with BCDC grievance officers and healthcare providers, was responsible for ensuring that Plaintiff had access to quality healthcare. (*Id*. ¶ 3.) Defendant Torres did not respond to the June 24, 2009 letter. (*Id*. ¶ 45.)

On June 29, 2009, Plaintiff returned to medical "complaining that he was to receive weekly tightening of his brace and physical therapy as prescribed by the therapist and that, since May 8th, had only been to [physical therapy] twice." (*Id*. ¶ 46.) Defendant Garcia increased the

3

brace tension and instructed Plaintiff to return to medical in two weeks for another tightening. (*Id.* ¶ 48.)

On July 2, 2009, Plaintiff filed another grievance, indicating that he was still not receiving his prescribed physical therapy and was being denied access to the exercise bike in the infirmary.  (*Id*. ¶ 47.)  BCDC responded by asserting that Plaintiff had an off-site physical therapy visit pending and that he was seen in the infirmary and was receiving appropriate care. (*Id.* ¶ 48.)  On July 14, 2009, a mid-level provider completed an off-site healthcare referral, noting that Plaintiff's original physical therapy order had been written on May, 8, 2009, and that Plaintiff had only been to physical therapy twice.  (*Id*. ¶ 49.)  This mid-level provider completed a Standard Referral Form directing BCDC security to give Plaintiff an extra blanket, a triangular bandage, and access to the exercise bike in the infirmary three time weekly for sixty days.  (*Id*.) Defendant Shannon overruled the midlevel provider's order to allow Plaintiff access to the exercise bike.  (*Id*.)  The same day, July 14, 2009, Defendant Shannon completed an off-site referral for Plaintiff to be transported to physical therapy on July 22, 2009.  (*Id.* ¶ 50.)

Plaintiff received physical therapy on July 22, 2009, and returned to BCDC with "new orders for exercise on the Elliptical three times weekly and no need to return to . . . off-site physical therapy."  (*Id.* ¶ 51.)  On August 21, 2009, Plaintiff filed a Grievance Appeal complaining of "continued problems with access to prescribed physical therapy."  (*Id.* ¶ 52.) BCDC responded by informing Plaintiff that he was receiving appropriate care under his BCDC doctor, who was his provider and would determine appropriate care.  (*Id.* ¶ 53.)  Finally, on October 28, 2009, Plaintiff was transferred from BCDC to the custody of the New Mexico Department of Corrections.  (*Id*. ¶ 55.)

Plaintiff alleges that he was denied access to required physical therapy from May 8,

4

2009, until his transfer on October 28, 2009.  (*Id*. ¶ 74.)  As a result, Plaintiff alleges that he "incurred damages from the lack of timely and appropriate care of his orthopedic injury." (*Id*. ¶ 75.)

## II.  LEGAL STANDARD

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 573 (1007)).  The Supreme Court's prescribed inquiry when reviewing a motion to dismiss is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  To survive a dismissal, a plaintiff must "nudge his claims across the line from conceivable to plausible."  *Id.*  (quoting *Towmbly*, 550 U.S. at 570).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Id.*  Consequently, if the allegations in the complaint are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff has not met the plausibility standard.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" to show that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 555.  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  (internal citation omitted).

**III. ANALYSIS**

In Count IV of Plaintiff's First Amended Complaint ("Complaint") (Doc. 33), Plaintiff asserts a claim of negligence against both Defendant Torres and Defendant County (collectively "Defendants"[2]) under the New Mexico Tort Claims Act ("NMTCA"). The NMTCA limits the tort liability of governmental entities and public employees. *See Pemberton v. Cordova*, 734 P.2d 254, 255 (N.M. Ct. App. 1987). Section 41-4-4(A) of the NMTCA provides that governmental entities and public employees acting within their scope of duty "are granted immunity from liability for any tort except as waived by Sections 41-4-5 through 41-4-12." § 41-4-4(A). It is Plaintiff's burden to identify the specific statutory sections that waive immunity and to demonstrate that the facts alleged fit within one of the exceptions. *See Rubio v. Carlsbad Mun. Sch. Dist.*, 744 P.2d 919, 921 (N.M. Ct. App. 1987).

In his response to Defendant's Motion to Dismiss Tort Claims, Plaintiff alleges that tort immunity for the claims asserted against Defendants is waived under the following sections of the NMTCA: § 41-4-6, § 41-4-9, § 41-4-10, and § 41-4-12. Notably, Plaintiff narrows the scope of his negligence claim, specifying that the alleged negligent conduct by Defendants occurred *after* his March 11, 2009 surgery.[3] (Pl.'s Resp., at 6.) Additionally, Plaintiff emphasizes that his claims against Defendants are for the breach of their own duties, not for the negligent provision of health care and notwithstanding any duties owed by CMS to provide adequate healthcare to Plaintiff. (*Id.*) More specifically, Plaintiff maintains that Defendant Torres and Defendant County were negligent by failing to ensure an effective grievance process, by failing to

---

[2] The Court's use of "Defendants" herein refers only to Defendant Torres and Defendant County and not to the non-moving defendants.

[3]

adequately follow-up on Plaintiff's grievances and appeals regarding his access to prescribed medical treatment, and by failing to provide timely transport to off-site treatment. (*Id*. at 6-7, 12.) Factually, Plaintiff claims that he submitted various grievances and grievance appeals to BCDC officials alerting them that he was not receiving prescribed post-surgical physical therapy, access to an exercise bike, or a prescribed DynaSplint with weekly tightening. (Complaint, at ¶¶ 39, 47, 52.) Plaintiff claims that BCDC officials did not adequately respond to his grievances. (*Id.* ¶¶ 41, 48, 53.) Additionally, Plaintiff claims that he sent a letter directly to Defendant Torres regarding these grievances but received no response. (*Id.* ¶ 45.)

The doctrine of respondeat superior extends liability to public entities that have supervisory control over tortious actors. *Silva v. State*, 745 P.2d 380, 385 (N.M. 1987). Accordingly, Defendant County may be held vicariously liable for any alleged torts committed by Defendant Torres for which immunity has been waived, so long as he was not acting outside the scope of his authority. *See id.*

### A.  Section 41-4-6

Plaintiff contends that N. M. Stat. Ann. Section 41-4-6 operates as a waiver of immunity for Plaintiff's negligence claims against Defendants. Although he specifically identified other provisions, including § 41-4-9, § 41-4-10 and § 41-4-12, in his Complaint as bases for his negligence claims against Defendants, he identifies § 41-4-6 as an "additional" or "alternative" basis in his Response to Defendants' Motion to Dismiss Tort Claims. Plaintiff argues that he was not required to plead waiver under § 41-4-6 in his Complaint so long as the addition now does not prejudice Defendants in maintaining their defense upon the merits. (Pl.'s Resp., at 14) (citing *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996)). Defendants do not contend that they have been prejudiced, but argue instead that § 41-4-6 does not provide a waiver of

immunity for Plaintiff's negligence claims against them.

Section 41-4-6 provides that immunity "does not apply to liability for damages resulting from bodily injury . . . caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." § 41-4-6.  Plaintiff notes that waiver of immunity under § 41-4-6 "has been interpreted broadly to protect citizens from the consequences of dangerous conditions created by the negligence of public employees."  (Pl.'s Resp., at 9) (citing *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259 (N.M. 2006)).  Although Plaintiff's allegations do not present a classic premises liability situation, as they do not relate to any physical defects in the BCDC facilities, the Court must examine whether his claims nevertheless fit within the class of claims for which New Mexico courts have found waiver under § 41-4-6.

Previously, the New Mexico Court of Appeals concluded that § 41-4-6 applied only to suits against governmental entities in premises liability situations; that is, "for injuries sustained due to defects in buildings."  *Rivera v. King*, 765 P.2d 1187, 1194 (N.M. Ct. App. 1988).  However, the New Mexico Supreme Court has since enlarged the application of §41-4-6, determining that it is not limited to claims for injuries caused by physical defects in a particular property.  *See, e.g., Bober v. New Mexico State Fair*, 808 P.2d 614, 623 (N.M. 1991) (finding waiver of immunity under § 41-4-6 for the claim of a motorist who was injured in a collision with a vehicle as it exited the state fairgrounds parking area onto an abutting highway).  Indeed "Section 41-4-6 now waives tort immunity for a wider variety of negligent acts in the operation or maintenance of public property."  *Williams v. Central Consol. Sch. Dist.*, 952 P.2d 978, 982 (N.M. Ct. App. 1997).

Yet New Mexico courts have been reluctant to find waiver under § 41-4-6 for the

performance of administrative tasks within the corrections system, such as the supervision or classification of inmates. *See, e.g., Archibeque v. Moya*, 866 P.2d 344, 349 (N.M. 1993); *Gallegos v. State*, 758 P.2d 299, 301 (N.M. Ct. App. 1987). In *Archibeque*, for instance, the New Mexico Supreme Court held that immunity was not waived under § 41-4-6, where a state penitentiary employee's alleged negligence in releasing a prisoner into the general prison population, which included one of his known enemies, resulted in the prisoner being injured by that enemy. *Id.* at 346. There, the court reasoned as follows:

> [the defendant] was not operating and maintaining the prison's physical premises when she negligently classified Archibeque as an inmate that could be released into the general prison population. Rather, she was performing an administrative function associated with the operation of the correction system. Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions. To read Section 41-46 as waiving immunity for negligent performance of administrative functions would be contrary to the plain language and intended purpose of the statute.

*Id.* at 347 (citing *State v. Riddall*, 811 P.2d 576, 578 (N.M. Ct. App. 1991)). The New Mexico Supreme Court in *Archibeque* emphasized that the alleged negligent misclassification of the plaintiff put him at risk but did not create an unsafe condition as to the general prison population. *Id.* at 348.

In contrast, however, the New Mexico Supreme Court determined that immunity *was* waived under § 41-4-6 in *Upton v. Clovis Municipal School District*, 141 P.3d 1259 (N.M. 2006) for a school district's alleged failure to follow safety procedures and to provide adequate emergency medical treatment for a student. *Id.* at 1265. In *Upton*, a child died as the result of an asthma attack that she suffered at school when a substitute physical education teacher required her participation in strenuous exercise. *Id.* at 1260. The child's parents had previously alerted the regular physical education teacher and the school about the child's asthma. *Id.*

9

Concluding that immunity had been waived under § 41-4-6, the New Mexico Supreme Court reasoned that the plaintiffs had asserted more than negligent supervision and had challenged the school district's general failure to implement safety policies for at-risk students. *Id.* at 1263. The court distinguished a number of prior cases interpreting § 41-4-6, determining that plaintiff's allegations fit within the waiver provision because the "[f]ailure to respond appropriately to an emergency medical situation is a potential threat to every student in school [, and t]he school's indifference towards [the child's] special medical needs ma[de] it more likely that all similarly situated students were at risk as well." *Id.* at 1265. Thus, a governmental entity's failure to follow safety policies that are applicable to users of a public facility may fall within the § 41-4-6 waiver for operation or maintenance of a public building.

More recently, in *Lessen v. City of Albuquerque,* 187 P.3d 179 (N.M. Ct. App. 2008), the New Mexico Court of Appeals reached the opposite conclusion – that there was no waiver of immunity under § 41-4-6 – with regard to a plaintiff's assertion that the City of Albuquerque had negligently operated and maintained a detention facility when it failed to ensure that inmates had proper transportation and protection upon their release and by failing to properly attend to their medical needs. *Lessen*, 187 P.3d at 183-84. In *Lessen*, the court indicated that the plaintiff's claims that employees of the Metropolitan Detention Center ("MDC") should have known that the decedent was suffering from heroin withdrawal and taken steps to protect him upon release, unlike the claims in *Upton*, could be characterized as negligent supervision claims for which § 41-4-6 does not waive immunity. *Id.* at 184. The court also reasoned as follows:

> At most, MDC employees' permitting Decedent to exit to the parking lot without a transportation waiver, a circumstance not established to pose a danger to the general population of released inmates, was a single discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public.

*Id.*

Here, too, Plaintiff's claims, also in the context of his incarceration within the corrections system, could be characterized as negligent supervision claims, where Plaintiff complains that Defendants should have known, based upon his grievances, that he was receiving inadequate post-surgical medical treatment and should have taken steps to remedy such inadequate care. Likewise, Defendants' decision not to provide particular relief to Plaintiff in response to his grievances was essentially a "single, discrete administrative decision" affecting only Plaintiff, not the general population of inmates at BCDC.

In conclusion, having surveyed the case law interpreting § 41-4-6 and having considered the plain meaning of the statute, the Court concludes that immunity is not waived under § 41-4-6 for Plaintiff's claims against Defendants. Simply put, Plaintiff's allegations are more akin to those in *Archibeque* and *Lessen* than those in *Upton.* In the Court's view, Defendants' alleged failure to respond in a particular way to Plaintiff's grievances regarding the medical care he was receiving from CMS was a discrete administrative action affecting Plaintiff alone rather than the negligent operation of a detention facility under § 41-4-6.

### B.  Section 41-4-9

N.M. Stat. Ann. Section 41-4-9 provides that immunity "does not apply to liability for damages resulting from bodily injury caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities."  § 41-4-9.  Plaintiff contends that this provision waives immunity for his claims against Defendants, as he alleges negligence in the operation of the infirmary at BCDC.

Defendants argue that this waiver of immunity provision is not available to Plaintiff for

two related reasons. First, they contend that Plaintiff has failed to specifically allege or argue that Defendant Torres' duties included "the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities." (Def.'s Reply, at 3.) Instead, Defendants note that Plaintiff's Complaint identifies Defendant Torres as the "Director of the Bernalillo County Detention Center" and Defendant William Shannon as the individual who "provided medical directorship of the BCDC medical services unit." (*Id*. at 3-4) (referencing Complaint, at ¶¶ 5, 102.)) Defendants also emphasize Plaintiff's concession that Defendant Torres' alleged wrongful conduct did not include the "negligent provisioning of healthcare." (*Id*. at 4.) Secondly, Defendants note that Plaintiff specifically asserted in his Complaint that it was CMS that operated the infirmary at BCDC pursuant to a contract with Defendant County. (*Id*.) (referencing Complaint, at ¶¶ 5-9.) Accordingly, Defendants argue that it was this separate legal entity that was engaged in the "operation" of the health care facility or infirmary at BCDC, not Defendant Torres or Defendant County. (*Id*.)

    Plaintiff does not specifically discuss the application of § 41-4-9 to the facts alleged. Rather, he makes general contentions that BCDC is operated under the control of its jail administrator, Defendant Torres, and that immunity granted by 41-4-4(A) does not apply to liability for damages resulting from injuries caused by the negligence of public employees while acting within the scope of their duties in the operation of a jail infirmary. (*See* Pl.'s Resp., at 11.)

    In *Lessen*, the New Mexico Court of Appeals analyzed the application of § 41-4-9 to claims made against a detention facility, which like Defendants had contracted with CMS to provide medical services to inmates. Like the Defendants here, the governmental defendants in *Lessen* emphasized that it was the medical contractor, CMS, that was responsible for providing medical care

and operating the infirmary at the detention facility, arguing that § 41-4-9 was therefore inapplicable to claims against the governmental entity responsible for the detention facility. *Id.* at 185. The New Mexico Court of Appeals noted that a governmental entity cannot escape altogether the duty to provide appropriate medical care to inmates by contracting with third parties, as they "remain[ ] liable for any constitutional deprivations caused by the policies or customs of the [third party]." *Id.* (citing *Ancata v. Prison Health Servs., Inc*., 769 F.2d 700 (11th Cir. 1985). On the other hand, the court concluded that "[t]his is not to say, however, that a governmental entity's constitutional obligation equates with waiver of immunity for negligent operation of an infirmary under [the NMTCA]." *Id.* at 185. The court ultimately determined that, apart from a constitutional deprivation, the City of Albuquerque had not waived immunity under § 41-4-9, though it operated the detention facility, "[b]ecause it was CMS that operated the infirmary or like facility at [the detention facility]." *Id.* at 185.

Similarly, here, according to the allegations of Plaintiff's Complaint, it was CMS that actually operated the infirmary at BCDC, not Defendants. Moreover, Plaintiff's allegations against Defendant Torres and Defendant County relate to their management of the grievance system rather than the actual medical treatment received by inmates at the infirmary. As such, § 41-4-9 does not operate to waive immunity for Plaintiff's claims against Defendants. *See Armijo v. Dept. of Health and Environment,* 775 P.2d 1333, 1335 (N.M. Ct. App. 1989) (determining that no waiver of immunity was provided under § 41-4-9 for the plaintiff's claims of negligence against the Health and Environment Department, because the Department did not regulate the actual clinical decision-making at the mental health facility and therefore did not operate the facility within the meaning of § 41-4-9); *Morrisey v. Ulibarri*, 08cv246 WJ/RHS (D.N.M. Apr. 28, 2010) (concluding that a plaintiff cannot sue the wardens of a correctional facility under § 41-4-9 – for preventing an inmate

from receiving medications, properly maintaining his colostomy bag, attending critical chemotherapy appointments, and receiving follow-up surgery in a timely manner – without presenting some evidence at the summary judgment stage that the wardens had supervisory power over the privately-run medical facility).

### C. Section 41-4-10

N.M. Stat. Ann. Section 41-4-10 provides that immunity "does not apply to liability for damages resulting from bodily injury . . . caused by the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services." § 41-4-10. Plaintiff provides little to no argument with respect to the application of § 41-4-10 beyond emphasizing that the statute applies when a public employees is "permitted by law" to provide health care services. (Pl.'s Resp., at 11.)

Consistent with its analysis under § 41-4-9, the Court concludes that the plain language of § 41-4-10 does not apply to Plaintiff's negligence claims against Defendant Torres. Again, Plaintiff alleges that Defendant Torres was negligent in failing to ensure an effective grievance process. He does not allege that Defendant Torres himself provided any health care services, that he was permitted by law to provide such services, or that he was acting within the scope of his duties of providing health care services at the time of his alleged negligence. Indeed, Plaintiff insists that Defendant Torres' negligent conduct "is *not* the negligent provisioning of healthcare." (Pl.'s Resp., at 6.) Just as it was not Defendant Torres that "operated" the infirmary at BCDC for purposes of § 41-4-9, it was not Defendant Torres that provided healthcare services to Plaintiff for purposes of § 41-4-10. Plaintiff has not demonstrated that his allegations against Defendant Torres, which relate to his management of the grievance system, fit within § 41-4-10's waiver provision.

### D. Section 41-4-12

14

> Finally, N.M. Stat. Ann. Section 41-4-12 provides that immunity
> does not apply to liability for personal injury . . . resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or *deprivation of any rights, privileges or immunities secured by the constitution* and laws of the United States or New Mexico *when caused by law enforcement officers* while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12 (emphasis added). Defendant Torres, as Director of the BCDC, is a law enforcement officer for purposes of the NMTCA. *Abalos v. Bernalillo Cnty. Dist. Attorney's Office*, 734 P.2d 794 (N.M. Ct. App. 1987) (determining that the director of BCDC is a law enforcement officer under the NMTCA, as his principal duties are to hold in custody persons accused of criminal offenses.)

Plaintiff asserts that he has sufficiently alleged a constitutional violation against Defendants to state a claim for waiver of immunity under § 41-4-12 of the NMTCA. In this regard, Plaintiff simply refers the Court to his Amended Response in Opposition to Defendant Torres' Motion to Dismiss Civil Rights Claims on Basis of Qualified Immunity ("Response to Torres' Qualified Immunity Motion") (Doc. 49), in which he maintained that Defendant Torres violated the Eighth and Fourteenth Amendments and Article II, Section 13 of the New Mexico Constitution. (Pl.'s Resp., at 14.) Significantly, in its April 6, 2012 Memorandum Opinion and Order this Court dismissed all constitutional claims against Defendant Torres and Defendant County. (Doc. 70.) It therefore follows that immunity cannot be waived under § 41-4-12 for Defendants alleged deprivation of Plaintiff's constitutional rights.

A question remains, however, as to whether Defendant Torres' alleged negligence, in failing to ensure an effective grievance process and in failing to adequately follow-up on grievances and appeals, may have caused third parties, namely employees of CMS, to deprive Plaintiff of his

15

constitutional rights. Notably, the Court has not yet entertained any dispositive motions with respect to alleged constitutional violations by Defendants William Shannon, Timothy McMurray, Orlando Garcia, and J.J. Box (hereinafter collectively "healthcare defendants"), and neither Plaintiff's response to the instant motion nor his Response to Torres' Qualified Immunity Motion discuss such claims. As Plaintiff notes in his Complaint, however, § 41-4-12 of the NMTCA "waives governmental immunity for . . . acts committed by third parties when caused by the negligence of the officers." (Complaint, at 17) (citing *Weinstein v. City of Santa Fe*, 916 P.2d 1313 (N.M. 1996).

In *Weinstein v. City of Santa Fe*, the plaintiff alleged that law enforcement officers were negligent in failing to develop a policy to prevent the premature release of certain prisoners and in failing to forward the paperwork necessary for the prosecution of a man who later raped the plaintiff, causing her to suffer a battery. *Id.* at 1320. There, the New Mexico Supreme Court determined that the plaintiff's allegations – that the law enforcement officers' negligence caused a third person to commit an enumerated tort against her – were sufficient to state a claim under § 41-4-12 of the NMTCA. As such, the Court must consider here, with respect to § 41-4-12, whether Plaintiff has stated a claim that the alleged constitutional violations by the healthcare defendants were caused by the alleged negligence of Defendant Torres. The Court concludes that Plaintiff has not stated such a claim.

First, Plaintiff does not directly assert, in his Complaint or otherwise, that the alleged constitutional violations by the healthcare defendants were actually caused by Defendant Torres' negligence. Rather he merely asserts both that 1) the healthcare defendants were deliberately indifferent to his serious medical condition when they failed to provide adequate and timely healthcare to him, and 2) under § 41-4-12, which he asserts is applicable, waiver exists for a claim

based on a law enforcement officer's negligence that caused a constitutional violation by a third party. (Complaint, at ¶ 84.) Even if the marrying of these two allegations in Plaintiff's Complaint means that the Plaintiff in fact alleges that Defendant Torres' negligence caused constitutional violations by the healthcare defendants, Plaintiff otherwise fails to state a claim under § 41-4-12.

This Court concluded in its April 6, 2012 Memorandum Opinion and Order that Plaintiff's "vague and conclusory allegation that he 'incurred damages'" did not satisfy the objective prong of the deliberate indifference standard for his constitutional claims against Defendant Torres. (Doc. 70, at 13.) To meet the objective prong, a plaintiff must allege "a 'sufficiently serious' medical need and 'substantial harm' from the delay or inadequacy in treating such need." (*Id.*) More specifically, the Court ruled that Plaintiff failed to state a plausible claim that receiving three off-site physical therapy sessions in six weeks, rather than six off-site physical therapy sessions in five weeks, posed an objectively serious risk to his health and resulted in "substantial harm." (*Id.*) In making such a determination, the Court noted that Plaintiff had not alleged that delayed or interrupted physical therapy resulted in lifelong handicap, permanent loss, or considerable pain and that, in contrast, his Complaint actually suggested otherwise – that even his physical therapist considered the condition of his post-op knee to be satisfactory, such that he no longer required coordinated physical therapy after his third physical therapy session. (*Id.*)

Although the previous determination that Plaintiff failed to meet the objective prong of the deliberate indifference standard was made by the Court in the context of Defendant Torres' Qualified Immunity Motion, the reasoning of the Court applies with equal force to the constitutional claims against the healthcare defendants. Plaintiff's Complaint fails to state a plausible claim that he had a "'sufficiently serious' medical need and 'substantial harm' from the delay or inadequacy in treating such need." As such, the Court concludes that Plaintiff fails to state a constitutional claim

17

against the healthcare defendants and, likewise, fails to state a claim that the negligence of Defendant Torres caused constitutional deprivations by healthcare defendants. Therefore, immunity is not waived for Plaintiff's claims against Defendants under § 41-4-12.

## IV. CONCLUSION

For all of these reasons, the Court concludes that Defendant's Motion to Dismiss Tort Claims is **well-taken** and that Count IV of Plaintiff's First Amended Complaint must be **dismissed**.

**IT IS THEREFORE ORDERED** that Defendants Ron Torres and Board of County Commissioners of the County of Bernalillo's Motion and Memorandum to Dismiss Tort Claims in Count IV ("Motion to Dismiss Tort Claims"), (Doc. 44), filed October 21, 2011 is hereby **GRANTED**.

**IT IS FURTHER ORDERED THAT** Plaintiff's claims in **Count IV** of his First Amended Complaint asserted against Defendant Torres and Defendant County is **DISMISSED WITH PREJUDICE** and that **Defendant Torres** is **DISMISSED WITH PREJUDICE.**

_____
SENIOR UNITED STATES DISTRICT JUDGE